383 F.Supp.2d 705 (2005)
AARP, et al., Plaintiffs,
v.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Defendant.
No. 05-CV-509.
United States District Court, E.D. Pennsylvania.
March 30, 2005.
Christopher G. Mackaronis, Michael J. Schrier, Bell Boyd & Lloyd PLLC, Laurie A. McCann, AARP Foundation Litigation, Washington, DC, Stephen G. Console, Console Law Offices LLC, Philadelphia, PA, for Plaintiffs.
Gillian Flory, Henry A. Azar, Jr., Jennifer R. Rivera, US Department of Justice, Jacqueline Eloine Coleman, U.S. Dept of Justice Civil Division Federal Programs Branch, Washington, DC, Joan K. Garner, U.S. Attorney's Office, Philadelphia, PA, for Defendant.
Douglas L. Greenfield, Bredhoff & Kaiser PLLC, Ann Elizabeth Reesman, Daniel Yager, McGuiness Norris & Williams, Washington, DC, Daniel P. O'Meara, Montgomery McCracken Walker & Rhoads, LLP, Philadelphia, PA, for Movants.

*706 MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.
INTRODUCTION
In this case, the AARP seeks to stop the Equal Employment Opportunity Commission (the "EEOC") from putting into effect an exemption.[1] This exemption allows employers to give retirees 65 or older health benefits that are inferior to the health benefits given to retirees who are younger than 65. The AARP argues that this practice is employment discrimination on the basis of age and is illegal under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., (the "ADEA").[2]
The EEOC argues persuasively that without this exemption, employers will reduce or eliminate health benefits for all retirees, no matter what their age. This is because retiree health benefits are becoming so expensive that employers cannot afford to give the same level of health benefits to all of their retirees. With the EEOC's exemption, employers could afford to offer greater health benefits to its retirees under age 65. Retirees over age 65 are eligible for Medicare and, therefore, have less need for employer-provided health benefits. Representatives from labor unions, the health insurance industry, and employer groups have filed amici curiae briefs in support of the EEOC's exemption.
Unfortunately for the EEOC, the Third Circuit Court of Appeals has already ruled that allowing employers to give retirees 65 or older health benefits that are inferior to the health benefits given to retirees who are younger than 65 is illegal under the ADEA. Erie County Retirees Ass'n v. County of Erie, 220 F.3d 193 (3d Cir.2000).
Plaintiffs AARP, Jack W. Macmillan, Frank H. Smith, Jr., Frank A. Wheeler, Fred Dochat, Gerald Fowler, and M. Elaine Clay (collectively referred to as the "AARP") bring this suit for declaratory judgment and permanent injunctive relief against defendant EEOC under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., the ADEA, 29 U.S.C. § 621 et seq., Article V of the United States Constitution, and the doctrine of separation of powers. The AARP seeks to enjoin implementation of the EEOC's recently approved regulation[3] that would allow *707 employers, without restriction, to reduce or terminate retiree health benefits when the retiree reaches age 65. Jurisdiction is based on the existence of a federal question. I have power to grant the requested relief, declaratory judgment and a permanent injunction, under 5 U.S.C. §§ 702 & 706.
BACKGROUND
Erie County Retirees Association v. County of Erie, 220 F.3d 193 (3rd Cir.2000), involved litigation over the provisions of the health benefits plan offered by the County of Erie, Pennsylvania, to its employees. Under this plan, the health coverage options for retirees were allegedly reduced once these retirees became Medicare-eligible. The Third Circuit reviewed the applicability of the ADEA, as amended by the Older Workers Benefit Protection Act ("OWBPA"), Pub.L. No. 101-433 (1990), to Erie County's plan. 220 F.3d at 196. Based upon a detailed statutory analysis of the Act, the Third Circuit held that it was clear from the face of the Act that Congress intended for the ADEA's prohibitions against age discrimination to apply to the practice of reducing retiree health benefits when retirees become eligible for Medicare. Id. at 208-17; Def.'s Opp. Pls.' Mot. Prelim. Inj. at 6; Mem. Supp. Pls.' Mot. Prelim. Inj. at 11-12. The Third Circuit concluded that Erie County's policy violated the ADEA unless Erie County met the "equal benefit or equal cost" defense set forth in 29 U.S.C. § 623(f)(2)(B)(i). Id.[4]
In October 2000, the EEOC adopted the Erie County ruling as its national enforcement policy. EEOC, Compliance Manual, Section 3: Employee Benefits, at § 3-IV B (2000). Through its enforcement, the EEOC learned that the Erie County rule was having the unintended consequence of discouraging employers from providing any retiree health benefits, which employers are not required by law to provide, so as not to run afoul of the ADEA's non-discrimination provisions. (Def.'s Opp. Pls.' Mot. Prelim. Inj. at 1.) Concerned about the detrimental effect of Erie County enforcement on retiree health plans, the EEOC voted unanimously in August 2001 to rescind the retiree health benefits portion of the Compliance Manual to further study and evaluate the position of the agency towards retiree health benefits. 68 Fed.Reg. 41,545 n. 25 (July 14, 2003). In examining the enforcement of the Erie County rule, the EEOC concluded that the equal benefit or equal cost defense was impracticable when applied to retiree health benefit plans. Id. at 41,546.
On July 14, 2003, the EEOC published for notice and comment a proposed rule that would exempt the coordination of retiree health benefit plans with Medicare-eligibility from the prohibitions of the ADEA even if that coordination did not satisfy the equal benefit or equal cost defense. 68 Fed.Reg. 41542 (July 14, 2003). On April 22, 2004, the EEOC approved the final rule containing the following relevant language:
(b) Exemption. Some employee benefit plans provide health benefits for retired participants that are altered, reduced or eliminated when the participant is eligible for Medicare health benefits or for health benefits under a comparable State health benefit plan, whether or not the participant actually enrolls in the other benefit program. Pursuant to the authority contained in section 9 of the Act [the ADEA], and in accordance with the procedures provided therein and in § 1625.30(b) of this part, it is hereby found necessary and proper in the public interest to exempt from all prohibitions *708 of the Act such coordination of retiree health benefits with Medicare or a comparable State health benefit.
EEOC Final Rule on ADEA Exemption for Retiree Health Benefits, Daily Lab. Rep. (BNA) No. 78, at E-1 (April 23, 2004). The approved exemption will take effect upon publication in the Federal Register.
On February 4, 2005, the AARP filed this suit challenging the exemption. At the same time, the AARP also filed a motion for a temporary restraining order and a preliminary injunction. In a hearing held on February 4, 2005, the EEOC agreed not to publish the challenged exemption before April 5, 2005. (Order of February 7, 2005.) On March 18, 2005, I heard oral arguments on the applicability of Erie County to the challenged exemption. After oral arguments, it was apparent that neither the AARP nor the EEOC dispute the holding of Erie County or the substance of the challenged exemption. (Tr. 3/18/05 at 7, 11; Def.'s Opp. Pls.' Mot. Prelim. Inj. at 6; Mem. Supp. Pls.' Mot. Prelim. Inj. at 11-12.) The EEOC agrees that the challenged exemption addresses the exact same policy that was examined in Erie County. (Tr. 3/18/05 at 7; Def.'s Opp. Pls.' Mot. Prelim. Inj. at 21.) The EEOC also concedes that, absent the challenged exemption, the provisions of the ADEA prohibit the practice of reducing or terminating retiree health benefits in accordance with Medicare eligibility. (Tr. 3/18/05 at 11, 15, 23.) With the agreement of both parties, under Federal Rule of Civil Procedure 65(a)(2), the application for a preliminary injunction is advanced as a trial of the action on the merits. (Pls.' Mot. Consolidate; Def.'s Resp. Pls.' Mot. Consolidate; Order of March 16, 2005.)
Currently before me are both parties' motions for summary judgment. Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir.1997). Both parties are in complete agreement on the facts of this case and the instant motions may be resolved as a matter of law. For the reasons set forth below, the AARP's motion is granted and the EEOC's motion is denied.
DISCUSSION
The AARP argues, inter alia, that the challenged exemption is contrary to the plain language of the ADEA. (Mem. Supp. Pls.' Mot. Prelim. Inj. at 7.) The EEOC argues that, under § 9 of the ADEA, 29 U.S.C. § 628, it has the power to issue the challenged exemption from the provisions of the ADEA because the exemption is "reasonable" and "necessary and proper in the public interest." (Def.'s Opp. Pls.' Mot. Prelim. Inj. at 20.) For the reasons set forth below, the AARP's argument is correct.
There is a two-step approach to judicial review of agency interpretations of acts of Congress. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the reviewing court must determine whether Congress expressed a clear and unambiguous intent in the statute concerning the precise question at issue. If congressional intent is clear and unambiguous, then that intent is the law and must be given effect. The court proceeds to the second step only "if the statute is silent or ambiguous with respect to the specific issue." Id. at 843, 104 S.Ct. 2778. At the second step, the court asks whether the agency's interpretation is *709 based on a "permissible construction" of the statute. Id. See also Marincas v. Lewis, 92 F.3d 195, 200 (3d Cir.1996). In this case I will not reach the second step of Chevron because the Third Circuit has already determined that Congress expressed a clear and unambiguous intent with regard to the precise question at issue.
In establishing the first-step of Chevron, the Supreme Court noted:
The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, the intention is the law and must be given effect.
467 U.S. at 843 n. 9, 104 S.Ct. 2778. Once a court has determined a statute's meaning, the court must adhere to that prior ruling under the doctrine of stare decisis and assess an agency's later interpretation of the statute against that settled law. Neal v. United States, 516 U.S. 284, 295, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996); United States v. Barbosa, 271 F.3d 438, 464 (3d Cir.2001).
In Erie County, the Third Circuit analyzed the meaning of the ADEA as applied to Erie County's practice of reducing retiree health benefits when retirees become eligible for Medicare. 220 F.3d 193. The Third Circuit first examined the substantive provisions of the ADEA. Id. at 208-09. Section 4(a)(1) of the ADEA makes it unlawful for an "employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). The phrase "compensation, terms, conditions, or privileges of employment" is defined to include "all employee benefits." 29 U.S.C. § 630(l). The Third Circuit held that "the ordinary meaning of the term `employee benefit' should be understood to encompass health coverage and other benefits which a retired person receives from his or her former employer" and that the "ADEA applies even when retiree benefits are structured discriminatorily after retirement." 220 F.3d at 209-10 (emphasis added). The Third Circuit then determined that Medicare-eligibility is an "age-based criterion" and that Erie County's policy of reducing health care benefits when retirees became eligible for Medicare violated the ADEA unless any of the ADEA's "safe harbors" was applicable. Id. at 212-13. Finally, the Third Circuit held in Erie County that the statutory provisions requiring employers to meet the equal benefit or equal cost standard applied to employers' practice of coordinating retiree health benefits to Medicare eligibility. Id. at 215 ("Congress intended [29 U.S.C.] section 623(f)(2)(B)(i) [providing for the equal benefit or equal cost defense] to apply when an employer reduces health benefits based on Medicare eligibility.") (emphasis added). Thus, in Erie County, the Third Circuit determined that Congress intended for the ADEA to prohibit the practice of coordinating employer-provided retiree health benefits with Medicare eligibility unless the employer could meet the equal cost or equal benefit defense.
Under the first step of Chevron, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43, 104 S.Ct. 2778. As the EEOC conceded at oral argument (Tr. 3/18/05 at 7,11,15, 23), the challenged exemption in this case would exempt from the ADEA the "coordination of retiree health benefits with Medicare or a comparable State health benefit." EEOC Final Rule on ADEA Exemption for Retiree Health Benefits, Daily Lab. Rep. (BNA) No. 78, at E-1 (April 23, 2004). If published, *710 this exemption would allow employers to engage in the same behavior prohibited in Erie County without having to meet the equal cost or equal benefit defense. Because the Third Circuit held in Erie County that Congress intended the ADEA to apply to the exact same behavior that the EEOC would exempt, the EEOC's challenged exemption is contrary to Congressional intent and the plain language of the ADEA. Bound by Third Circuit precedent, I will grant the AARP's motion for summary judgment.
The EEOC does not dispute the holding of Erie County, that the plain language of the ADEA prohibits the practice of coordinating retiree benefits with Medicare eligibility. (Tr. 3/18/05 at 11; Def.'s Opp. Pls.' Mot. Prelim. Inj. at 21.) Rather, the EEOC argues that under § 9 of the ADEA, 29 U.S.C. § 628, it has the power to exempt otherwise prohibited conduct from the ADEA as long as the exemption is "reasonable" and "necessary and proper in the public interest." (Def.'s Opp. Pls.' Mot. Prelim. Inj. at 19.)[5] Section 9 of the ADEA provides:
[T]he Equal Employment Opportunity Commission may issue such rules and regulations as it may consider necessary or appropriate for carrying out this chapter, and may establish such reasonable exemptions to and from any or all provisions of this chapter as it may find necessary and proper in the public interest.
29 U.S.C. § 628.
The EEOC argues that in applying the first step of the Chevron analysis to the challenged exemption, the court should focus on the language in section 9 rather than on the substantive provisions of the ADEA. (Def.'s Opp. Pls.' Mot. Prelim. Inj. at 19-20.) The EEOC argues that the plain meaning of the word "exemption" is to excuse from liability certain conduct that would otherwise be prohibited under the ADEA, even if the Third Circuit has expressly held that conduct to be prohibited. (Id.) Any other application of the Chevron analysis or interpretation of the word "exemption" would require the court to treat that word as surplusage. (Id. at 21.) However, the EEOC's line of reasoning in this case is flawed for at least three reasons.
First, as discussed above, the Third Circuit has already decided that Congress intended for the provisions of the ADEA "to apply when an employer reduces health benefits based on Medicare eligibility." Erie County, 220 F.3d at 215. Because "the intent of Congress is clear, that is the end of the matter." Chevron, 467 U.S. at 842, 104 S.Ct. 2778. An administrative agency, including the EEOC, may not issue regulations, rules or exemptions that go against the intent of Congress. See, e.g., Marincas, 92 F.3d 195 (overturning INS regulations establishing different adjudicatory procedures for stowaway asylum applicants and non-stowaway asylum applicants as contrary to clear Congressional intent); Quinn v. New York State Electric and Gas Corp., 569 F.Supp. 655, 661 (N.D.N.Y.1983) (finding that the EEOC's exemption of apprenticeship programs from the ADEA to be contrary to the language of the ADEA).[6]
*711 Second, examining solely the statutory provision that delegates rulemaking authority rather than the ADEA as a whole, the approach the EEOC is advocating, would render meaningless the first step of Chevron. Courts applying the first step of Chevron look to the substantive provisions of the act in question. See, e.g., Chevron, 467 U.S. at 859-62, 104 S.Ct. 2778 (attempting to determine Congressional intent by examining the statutory language defining "stationary source" and "major stationary source" but not examining the statutory language delegating rulemaking authority to the Environmental Protection Agency); Marincas, 92 F.3d at 200 (determining Congressional intent from the phrase "irrespective of such alien's status" rather than from the provisions giving the INS authority to establish asylum application procedures). To focus solely on the statutory provision that delegates rulemaking authority would allow every challenged rule and regulation to pass the first step of Chevron, regardless of the substantive provisions of the act in question. Therefore, courts must take into account the substantive provisions and prohibitions of the act in issue when reviewing agency action.
Finally, it is possible to interpret the "exemption" power that the EEOC has been given as a real provision rather than surplusage without giving the EEOC the power to legalize practices that directly contravene the intent of Congress. Agencies have broad power to regulate when "Congress has explicitly left a gap for the agency to fill." Chevron, 467 U.S. at 843, 104 S.Ct. 2778. The EEOC has the power to issue rules, regulations and exemptions within these explicit, or implicit, gaps that Congress left in the ADEA. In the case of the challenged exemption, however, the Third Circuit held that Congress did not allow for ambiguity with regard to the applicability of the ADEA to retiree health benefits.
Alternatively, the EEOC's section 9 exemption power can be interpreted to allow the EEOC to issue exemptions in individual cases. The EEOC itself interpreted the statute in this way when it was contemplating rescinding the exemption of apprenticeship programs from the ADEA. 45 Fed.Reg. 64213 (Sept. 29, 1980) ("The Commission believes that Section 4(f)(1) and Section 9 of the Act [29 U.S.C. §§ 623(f)(1), 628] provide sufficient flexibility to accommodate those apprenticeship programs which can establish legitimate age limitations, thereby obviating the need for the blanket exception contained in the former interpretation.").[7] Thus, following *712 the Third Circuit's precedent in Erie County does not necessarily lead to the conclusion that the word "exemption" is mere surplusage.
The EEOC cited no relevant cases supporting its analysis of this case. On the other hand, the Third Circuit's decision in Erie County held that the ADEA prohibits the very practice the EEOC's exemption would allow. Under the first step of Chevron, I am controlled by Congress's intent, as expressed in the plain language of the ADEA and as interpreted by the Third Circuit. Therefore, I must find that the challenged exemption is invalid.
CONCLUSION
For the reasons stated above, the AARP's motion for summary judgment is granted and the EEOC's motion for summary judgment is denied. The challenged regulation, originally published at 68 Fed.Reg. 41542, is contrary to law and violates the clear intent of Congress in passing and amending the ADEA, as articulated in Erie County, 220 F.3d 193. The EEOC will be permanently enjoined from publishing or otherwise implementing the challenged regulation.

ORDER
AND NOW, this ______ day of March, 2005, it is ORDERED that:
(1) Plaintiffs' motion for summary judgment (Doc. # 54) is GRANTED and defendant's motion for summary judgment (Doc. # 53) is DENIED; and
(2) Defendant EEOC is permanently enjoined from publishing or otherwise implementing the regulation at issue in this case; and
(3) The hearing scheduled for March 31, 2005 is cancelled.
NOTES
[1] The parties use the words "rule," "regulation," and "exemption" interchangeably to refer to the challenged exemption. Indeed, the EEOC issued a "Notice of Proposed Rulemaking" stating that the EEOC "proposes to amend its regulations" with an "exemption." 68 Fed.Reg. 41542 (July 14, 2003). Regardless of whether the challenged exemption is labeled a rule, a regulation or an exemption, I must determine whether the agency, the EEOC, has the authority under the ADEA to take the action in question. This determination involves the "agency's construction of the statute which it administers" and, therefore, must be reviewed under the standard set forth in Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Because the label of the agency action does not change the necessary analysis, I will also use the words "exemption," "regulation," and "rule" interchangeably to refer to the challenged exemption.
[2] Currently, it is illegal under Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., (the "ADEA") for employers to reduce or terminate retiree health benefits once the retiree becomes eligible for Medicare at age 65 unless the employers can meet the standard for the "equal benefit or equal cost" defense set forth in the statute. The equal benefit or equal cost defense allows employers to coordinate retiree health benefits with Medicare eligibility at age 65 if (1) the total benefits (including benefits from Medicare) received by retirees over age 65 is equal to the benefits received by retirees under age 65 or (2) the cost incurred by the employer for health benefits for retirees over age 65 is equal to the cost incurred for retirees under age 65. 29 U.S.C. § 623(f)(2)(B)(i).
[3] For the full text of the approved regulation, see EEOC Final Rule on ADEA Exemption for Retiree Health Benefits, Daily Lab. Rep.(BNA) No. 78, at E-1 (April 23, 2004).
[4] Through an amicus curiae brief filed in Erie County, the EEOC advocated the same position that the Third Circuit ultimately adopted. 220 F.3d at 210.
[5] The parties have cited to, and I have found, no case law that directly addresses the scope of the EEOC's power to issue exemptions under section 9 of the ADEA. The EEOC represented at oral argument that it has promulgated an "exemption" under section 9 on only one previous occasion. (Tr. 3/18/05 at 12-3.) This exemption allowed for non-EEOC-supervised waivers of claims under the ADEA. The EEOC's power to issue this exemption was never challenged in court. (Id.) Indeed, there is very little case law that even mentions the EEOC's exemption power under section 9 of the ADEA.
[6] The court in Quinn noted that the EEOC's apprenticeship exemption was an interpretive rule rather than a legislative rule and, therefore, was due less deference. 569 F.Supp. at 660 n. 5. The Quinn court also noted that the EEOC had the power to issue exemptions under 29 U.S.C. § 628 and that Congress anticipated that exceptions would be carved out of the broad prohibitions of the ADEA. Id. at 661. However, "the pertinent question is not whether the EEOC can make exceptions; it is, rather, whether this particular exception, for apprenticeship programs, finds support elsewhere in the language of the Act." Id. The challenged exemption in the instant case is a legislative rule rather than an interpretive rule and thus is due more deference. Id. at 660 n. 5. However, legislative rules are still subject to judicial review under the Chevron analysis and must be consistent with the intent of Congress. 467 U.S. at 842, 104 S.Ct. 2778.
[7] The EEOC cites only one case to support its argument that courts must defer to an administrative agency's exemption power. Def.'s Opp. Pls.' Mot. Summ. J. at 2 (citing C.K. v. New Jersey Dep't of Health and Human Services, 92 F.3d 171 (3d Cir.1996) (involving the Secretary of Health and Human Services' power to waive individual state programs from the requirements of federal laws governing Aid to Families with Dependent Children programs)). However, C.K. does not support the EEOC's argument. First, the relevant statutory language in C.K. is significantly more specific than section 9 of the ADEA. The waiver authority at issue in C.K. is contained in a provision titled "Demonstration projects" and only allows the agency to waive experimental state programs that promote the objectives of the act. 42 U.S.C. § 1315. Second, the waiver power in C.K. allows the agency to issue waivers for particular state programs only. It does not allow the agency to issue a blanket exemption for illegal behavior, which is what the EEOC seeks to do in this case. Rather than supporting the EEOC's argument, C.K. provides an example of an administrative agency's "exemption" power being confined to individualized cases and situations.