

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2007

# AARP v. EEOC

Precedential or Non-Precedential: Precedential

Docket No. 05-4594

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"AARP v. EEOC" (2007). *2007 Decisions.* Paper 853.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/853

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4594
_____


AMERICAN ASSOCIATION OF RETIRED PERSONS;
JACK W. MACMILLAN; FRANK H. SMITH, JR.; FRANK
A. WHEELER; FRED DOCHAT; GERALD FOWLER; M.
ELAINE CLAY,

                                        Appellants


v.


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
_____


Appeal from the
United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 05-cv-00509)
District Judge: The Honorable Anita B. Brody
_____


Argued on February 27, 2007
_____

Before: MCKEE and ALDISERT, <u>Circuit Judges</u>, and
RESTANI[*], <u>Judge</u>

(Filed: June 4, 2007)

Christopher G. Mackaronis (Argued)
Brickfield, Burchette, Ritts and Stone
1025 Thomas Jefferson Street, N.W.
8th Floor, West Tower
Washington, DC 20007

Laurie A. McCann
American Association of Retired Persons
601 E Street, N.W.
Washington, DC 20049

Stephen G. Console
1525 Locust Street
9th Floor
Philadelphia, PA 19102

      Counsel for Appellants

Anthony A. Yang (Argued)

---

[*]The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

United States Department of Justice
Appellate Section
950 Pennsylvania Avenue, N.W.
Room 7248
Washington, DC 20530

Marleigh D. Dover
United States Department of Justice
10th & Pennsylvania Avenue, N.W.
Room 3127
Washington, DC 20530

      Counsel for Appellees

Barbara B. Brown
Neal D. Mollen
Paul, Hastings, Janofsky & Walker
875 15th Street, N.W.
Washington, DC 20005

      Counsel for Amicus-Appellee Chamber of Commerce
      of the United States

Douglas L. Greenfield
Bredhoff & Kaiser
805 15th Street, N.W.
Suite 1000
Washington, DC 20005

      Counsel for Amicus-Appellees National Education

Association; American Federation of Teachers; International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; American Federation of State, County and Municipal Employees; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union; and International Association of Fire Fighters

Ann E. Reesman
McGuiness, Norris & Williams
1015 15th Street, N.W.
Suite 1200
Washington, DC 20005

Counsel for Amicus-Appellees Equal Employment Advisory Council; HR Policy Association; America's Health Insurance Plans; American Benefits Council; ERISA Industry Committee; National Rural Electric Cooperative Association; Society for Human Resource Management; American Council on Education; College and University Professional Association for Human Resources; and WorldatWork

_____

OPINION OF THE COURT
_____

RESTANI, <u>Judge</u>.

4

Appellants American Association of Retired Persons, et al. ("AARP"), appeal a judgment of the United States District Court for the Eastern District of Pennsylvania. The District Court vacated, on the basis of a significant change in law, a previous grant of summary judgment in favor of AARP, and instead granted summary judgment in favor of the Equal Employment Opportunity Commission ("EEOC"). At issue is a regulation that would exempt from the Age Discrimination in Employment Act ("ADEA")[1] employer coordination of retirement benefits with, inter alia, Medicare benefits. AARP challenges the regulation as contrary to the terms of the ADEA, and seeks to reinstate the District Court's permanent injunction against implementation of the regulation. We will affirm the District Court's order granting summary judgment in favor of the EEOC on grounds other than those relied on by the District Court.

## BACKGROUND

On July 14, 2003, the EEOC published a notice of proposed rulemaking to exempt from the prohibitions of the ADEA "the practice of altering, reducing or eliminating employer-sponsored retiree health benefits when retirees become eligible for Medicare or a State-sponsored retiree health benefits program." Age Discrimination in Employment Act; Retiree Health Benefits, 68 Fed. Reg. 41,542, 41,542 (EEOC

---

[1] 29 U.S.C. §§ 621–34, as amended by the Older Workers Benefit Protection Act, Pub. L. No. 101-433, 104 Stat. 978 (1990).

July 14, 2003) (notice of proposed rulemaking).[2]  AARP brought suit in the Eastern District of Pennsylvania on February 4, 2005, challenging the proposed regulation under the Administrative Procedure Act, 5 U.S.C. §§ 551, et seq. ("APA"), and the ADEA.  AARP v. Equal Employment Opportunity Comm'n, 383 F. Supp. 2d 705, 708 (E.D. Pa. 2005) ("AARP I").

Initially, the District Court granted summary judgment in favor of AARP, holding that the challenged regulation was contrary to law under this court's decision in Erie County Retirees Ass'n v. County of Erie, 220 F.3d 193 (3d Cir. 2000). In Erie County, consistent with the position of the EEOC in that action, we held that, as Medicare eligibility is age dependent, the ADEA did not permit reduction or termination of retiree health benefits upon Medicare eligibility unless the employer met the "equal benefit or equal cost" defense set forth in section 4 of the ADEA.[3]  Id. at 217.  Accordingly, here the District Court stated

---

[2]The final rule would read as follows:

(b) Exemption.  Some employee benefit plans provide health benefits for retired participants that are altered, reduced or eliminated when the participant is eligible for Medicare health benefits or for health benefits under a comparable State health benefit plan.  Pursuant to the authority contained in section 9 of the [ADEA], and in accordance with the procedures provided therein . . . it is hereby found necessary and proper in the public interest to exempt from all prohibitions of the Act such coordination of retiree health benefits with Medicare or a comparable State health benefit plan.

68 Fed. Reg. at 41,548–49.

[3]The relevant portion of 29 U.S.C. § 623 reads as follows:
(continued...)

6

that "[b]ecause the Third Circuit held in Erie County that Congress intended the ADEA to apply to the exact same behavior that the EEOC would exempt, the EEOC's challenged exemption is contrary to Congressional intent and the plain language of the ADEA." AARP I, 383 F. Supp. 2d at 710. The District Court permanently enjoined the EEOC from "publishing or otherwise implementing the regulation at issue." Id. at 712. The EEOC appealed that judgment.

On June 27, 2005, while the first appeal was pending, the Supreme Court decided National Cable and Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967 (2005). Brand X held that prior judicial interpretation of a statute bars subsequent agency interpretations only where the precedent "unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill." Brand X, 545 U.S. at 983. The EEOC moved for relief from judgment in the District Court, citing Brand X as an intervening change of law with respect to the court's application of Erie County and arguing that its proposed regulation was consistent with the statute. AARP v. Equal Employment Opportunity Comm'n, 390 F. Supp. 2d 437, 441–42 (E.D. Pa. 2005) ("AARP II"). The District Court granted the motion, vacating its decision in AARP I and granting summary judgment

---

³(...continued)

It shall not be unlawful for an employer, employment agency, or labor organization . . . to take any action otherwise prohibited . . . to observe the terms of a bona fide employee benefit plan . . . where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker.

29 U.S.C. § 623(f)(2)(B)(i).

7

in favor of the EEOC.  Id. at 462.  The District Court stayed its order lifting the permanent injunction pending any appeal.  Id. at 463.  AARP appeals.

## JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment de novo.  Concerned Citizens Alliance, Inc., v. Slater, 176 F.3d 686, 693 (3d Cir. 1999).

## DISCUSSION

At issue is whether the proposed regulation is within the EEOC's authority under the ADEA, and whether the regulation is valid under the APA.

## I.      The Proposed Regulation is Within the EEOC's Exemption Authority Under Section 9 of the ADEA

There is a well-trodden two-step approach to judicial review of an agency regulation.  Chevron, U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842–43 (1984).  Step one asks "whether Congress has directly spoken to the precise question at issue." Id. at 842.  If the intent of Congress is clearly expressed in the statute, "that is the end of the matter; for the court, as well as the agency," and such intent must be given effect.  Id. at 842–43.  "[I]f the statute is silent or ambiguous with respect to the specific issue," then the court proceeds to a step-two determination of whether the agency interpretation is based on a "permissible construction" of the statute.  Id. at 843.

The precise question in this case is whether the EEOC has the power to issue a regulation exempting from the prohibitions of the ADEA employer-sponsored benefits plans

8

that coordinate retiree health benefits with eligibility for Medicare or state-sponsored health benefits programs. Section 9 of the ADEA authorizes the EEOC to "establish such reasonable exemptions to and from any or all provisions of [the Act] as it may find necessary and proper in the public interest." 29 U.S.C. § 628. The EEOC acknowledges this source of authority in its notice of the proposed rulemaking, stating that "[a]fter an in-depth study, the Commission believes that the practice of [coordinating retiree health benefits with Medicare eligibility] presents a circumstance that warrants Commission exercise of its ADEA exemption authority. . . . [P]ursuant to its authority under Section 9 of the Act, the EEOC proposes . . . this notice of proposed rulemaking." 68 Fed. Reg. at 41,542.

Section 9 clearly and unambiguously grants to the EEOC the authority to provide, at least, narrow exemptions from the prohibitions of the ADEA. By definition, the power to grant "exemptions" provides an agency with authority to permit certain actions at variance with the express provisions of the statute in question. By stating that "any or all provisions" may be subject to exemptions,[4] Congress made plain its intent to allow limited practices not otherwise permitted under the statute, so long as they are "reasonable" and "necessary and proper in the public interest." 29 U.S.C. § 628 (emphasis added).[5]

---

[4]"The term 'exemption' is ordinarily used to denote relief from a duty or service." Am. Paper Inst., Inc. v. Am. Elec. Power Serv. Corp., 461 U.S. 402, 421 (1983). See also id. ("[T]o 'exempt' is 'to relieve, excuse or set free from a duty or service imposed upon the general class to which the individual exempted belongs.'") (quoting Black's Law Dictionary 513 (5th ed. 1979)).

[5]Although AARP correctly notes that no administrative agency is permitted to effectively repeal any portion of a statute

(continued...)

9

Because the language of section 9 expressly grants to the EEOC the power to implement such exceptions, there is no question that a limited exemption shown by the agency to be reasonable, necessary, and proper falls within the agency's authority under the statute.

AARP argues that the proposed exemption exceeds the EEOC's authority under section 9 because it would allow certain employer practices otherwise prohibited by the ADEA. (See Appellants' Br. 35–36.) AARP points to section 4 of the ADEA, which states that "[i]t shall be unlawful for an employer . . . [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). As discussed previously, however, it is clear that Congress intended to permit limited exemptions from the ADEA, including the anti-discrimination provision of section 4. Section 9 unambiguously grants reasonable exemption authority to the EEOC, and plainly states that such authority applies to any and all parts of the statute. Because section 9 clearly grants such authority to the EEOC, the fact that the proposed regulation would allow certain practices not otherwise permitted under section 4 does not render the regulation invalid.

This is not to say that the EEOC's exemption authority is unlimited. As indicated, section 9 limits permissible exemptions to those that are shown to be "reasonable" and "necessary and

---

⁵(...continued) by regulation, see, e.g., United States v. Shumway, 199 F.3d 1093, 1107 (9th Cir. 1999), the proposed regulation at issue is narrowly focused and not contrary to the terms and purpose of the ADEA, and therefore does not present such a challenge.

proper in the public interest." 29 U.S.C. § 628.[6]  Here, the EEOC issued the proposed regulation in response to its finding that employer-sponsored retiree health benefits were decreasing. 68 Fed. Reg. at 41,543–44.  Rather than maintaining retiree benefits at pre-Medicare eligibility levels for all retirees in order to avoid discrimination under the ADEA, some employers chose to reduce all retiree health benefits to a lower level.  Id. at 41,546.  Further, in addition to rising health care costs and

---

[6]According to the "delegation doctrine," under the Constitution Congress is required to limit delegations of legislative authority by setting forth in the relevant statute "'an intelligible principle to which the [agency] authorized to [act] is directed to conform.'" Touby v. United States, 500 U.S. 160, 165 (1991) (quoting J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 409 (1928)).  We must narrowly interpret section 9 of the ADEA, if possible, to avoid any potential delegation problem. Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst., 448 U.S. 607, 646 (1980) ("A construction of the statute that avoids [an] open-ended grant [of legislative authority] should certainly be favored."); see also United States v. Jin Fuey Moy, 241 U.S. 394, 401 (1916) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score.")  In section 9, Congress establishes clear limitations on the EEOC's exemption authority by requiring that the exemptions be "reasonable" and "necessary and proper in the public interest." 29 U.S.C. § 628. We interpret this to require narrow exemptions tailored to the overall purpose of the ADEA, an intelligible principle.  Here, the EEOC's exercise of its exemption authority through the proposed regulation is narrowly focused to permit a discrete practice pursuant to the purposes of the ADEA.  As discussed, the proposed regulation adheres to the limitations set forth in section 9.  Therefore, the exemption at issue does not run afoul of the requirements of the delegation doctrine.

increased demand for retiree benefits, the EEOC correctly noted[7] that employers are not required to provide any retiree health benefits, or to maintain such plans once they have been established.[8]  Id. at 41,542–43.  Retiree benefits often face elimination under these constraints, and the EEOC issued the proposed exemption to "permit[] employers to offer [retiree] benefits to the greatest extent possible."[9]  Id. at 41,543.  We

---

[7]See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 77 (1995) (stating that employers "are generally free under [the Employee Retirement Security Act, 29 U.S.C. § 1001, et seq.] for any reason at any time to adopt, modify, or terminate welfare plans").

[8]There are exceptions to this general rule.  The federal government, for example, is required to offer health benefits to some retirees.  See 5 U.S.C. §§ 8901(3), 8905(b).

[9]As noted by the District Court, the proposed exemption has the support of various amici curiae, including labor and industrial organizations.  See AARP II, 390 F. Supp. 2d at 441–42 n.3; see also Br. of Amicus Curiae Chamber of Commerce of the United States; Br. of Amici Curiae National Education Association, American Federation of Teachers, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, American Federation of State, County and Municipal Employees, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, and International Association of Fire Fighters; Br. of Amici Curiae Equal Employment Advisory Council, HR Policy Association, America's Health Insurance Plans, American Benefits Council, ERISA Industry Committee, National Rural Electric Cooperative Association, Society for Human Resource Management, American Council on Education, College and
(continued...)

12

recognize with some dismay that the proposed exemption may allow employers to reduce health benefits to retirees over the age of sixty-five while maintaining greater benefits for younger retirees. Under the circumstances, however, the EEOC has shown that this narrow exemption from the ADEA is a reasonable, necessary and proper exercise of its section 9 authority, as over time it will likely benefit all retirees.[10]

It is clear that the proposed regulation is expressly authorized by the terms of section 9 of the ADEA. The proposed exemption permits the narrow practice of coordinating employer-sponsored retiree health benefits with eligibility for Medicare and state-sponsored health programs for the necessary

---

[9](...continued) University Professional Association for Human Resources, and WorldatWork.

[10]This is analogous to the Second Circuit's approach in Schiller v. Tower Semiconductor Ltd., 449 F.3d 286 (2d Cir. 2006), which upheld the Security and Exchange Commission's statutory authority to issue exemptions, so long as the exemptions are shown to be in the public interest and maintain sufficient protections for the class protected by the statute. See Schiller, 449 F.3d at 296–97 ("The practical effect of an exemption . . . is, everything else being equal, a decrease in the net level of investor protection. Therefore, the prohibition of any decrease in the level of investor protection would at the very least substantially curtail, if not completely eviscerate, the Commission's exemptive authority. Such an effect is clearly at odds with congressional intent to grant the Commission flexibility in adopting exemptions. We therefore conclude . . . that the Commission can promulgate an exemption once it has determined that the exemption serves the public interest while at the same time leaving in place adequate investor protections." (footnote omitted)).

13

and proper purpose of encouraging employers to provide the greatest possible health benefits for all retirees. The regulation is consistent with the purposes and intent of the ADEA, and is a reasonable exercise by the EEOC of authority delegated to it by Congress.

Under Chevron step one, Congress' express intent to permit such exemptions under section 9 of the ADEA must be given effect; it is unnecessary to proceed to step two. We note, however, that the reasonableness inquiry made here under Chevron step one as to the statutory limitations on exemptions is similar to the usual reasonableness inquiry under Chevron step two. Nonetheless, we do not decide the extent to which our decision in Erie County permits of more than one reasonable interpretation of the statute. The District Court, applying Brand X, held that Erie County set forth "only the best of several alternatives [and] is not the 'only permissible' interpretation" of the ADEA, AARP II, 390 F. Supp. 2d at 448. We do not reach this issue because we do not find, as did the District Court, that ambiguity must be present in the ADEA in order for the EEOC to exercise its authority under section 9. Rather, the proposed regulation presents a narrow exemption expressly authorized by the statute. Therefore, even if Erie County sets forth the only acceptable view of section 4 of the ADEA, the exemption is nonetheless permitted under section 9.

## II.     The Proposed Regulation is Valid According to the Requirements of the APA

AARP also challenges the EEOC's proposed regulation under the APA. According to the APA, we must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a); N.J. Coal. for Fair Broad. v. F.C.C., 574 F.2d 1119, 1125 (3d Cir 1978). This test asks us to "focus[ ] on the agency's decision making process,

not on the decision itself." NVE Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 190 (3d Cir. 2006) (emphasis omitted).

AARP first asserts that the EEOC acted arbitrarily by disregarding its own regulation, 29 C.F.R. § 1627.15(b), which states that its exemption authority under the ADEA "will be exercised with caution and due regard for the remedial purpose of the statute." Id. Because we have found that the proposed regulation, being narrowly drawn to meet the goals of the ADEA and being in the public interest, is expressly authorized by the ADEA, this argument is unavailing. The EEOC has shown the regulation to be reasonable, necessary, and proper according to the terms and purposes of the statute. Therefore, there is no question that the EEOC has exercised due regard for the purposes of the ADEA according to the requirements of 29 C.F.R. § 1627.15(b). For the same reasons, AARP's argument that the proposed regulation exceeds the EEOC's authority because it addresses health care policy is equally without merit.

AARP's argument that the proposed regulation is arbitrary and capricious because it represents a change in agency policy is unsupported by existing law. Although it is "well-established that an agency may not depart from 'established precedent without announcing a principled reason for such a reversal,'" Fertilizer Institute v. Browner, 163 F.3d 774, 778 (3d Cir. 1998) (quoting Donovan v. Adams Steel Erection, Inc., 766 F.2d 804, 807 (3d Cir. 1985)), a change in agency policy supported by "a reasoned analysis for the change" is not arbitrary and capricious. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 40–42 (1983). In the notice of proposed rulemaking, the EEOC set forth its reasons for adopting the new exemption, and indicated that the regulation is intended to respond to the unintended negative effects of its prior approach: namely, that employers have chosen to terminate retiree benefits rather than adhere to a

15

standard that has proven too costly to sustain. 68 Fed. Reg. at 41,542–43. The EEOC's review of available material and careful explanation of its reasoning on this point demonstrates that its change in policy is neither arbitrary nor capricious.

In addition, AARP claims that the EEOC acted arbitrarily by failing to consider all relevant factors and possible alternatives in proposing the exemption. AARP claims that the EEOC did not fully consider that a number of employers offer full health benefits to all retirees. In the notice of proposed regulation, however, the EEOC indicated a number of relevant studies and applicable statistics to support its reasoning on this point.[11] Relying substantially on these reports,[12] the EEOC concluded that the proposed exemption is necessary to counteract the effects of rising health care costs and to encourage employers to provide retiree health benefits to the greatest possible extent. Id. at 41,542, 41,544. Similarly, AARP's assertion that the EEOC failed to consider the potential

---

[11]The EEOC cited, for example, an outside report that estimated "a 15 percent decline in the number of large employers providing pre-age 65 retiree health coverage between 1991 and 2000 and an 18 percent decrease in the number of large employers providing health benefits to retirees age 65 or older during the same period." 68 Fed. Reg. at 41,544 (citing Hewitt Associates LLC, Trends in Retiree Health Plans (2001).).

[12]While the EEOC never initiated its own, independent survey of healthcare providers, the "failure to conduct [an] independent study [is] not violative of [the] APA because notice and comment procedures 'permit parties to bring relevant information quickly to the agency's attention.'" Chamber of Commerce of U.S. v. Sec. & Exch. Comm'n, 412 F.3d 133, 142 (D.C. Cir. 2005) (quoting Nat'l Ass'n of Regulatory Util. Comm'rs v. F.C.C., 737 F.2d 1095, 1124 (D.C. Cir. 1984)).

effect on all workers, particularly retirees over the age of sixty-five, is contradicted by the EEOC's explanations accompanying the proposed regulation. The EEOC recognized that "many retirees in this age group rely on employer-sponsored benefits," and that such programs are "valuable benefit[s] for older persons [and] should be protected and preserved." Id. at 41,544. The EEOC determined that the proposed exemption would be in the interests of all retirees, "permit[ting] employers to provide a valuable benefit to early retirees who otherwise might not be able to afford health insurance coverage and allow[ing] employers to provide valuable supplemental health benefits to retirees who are eligible for Medicare." Id. at 41,547. AARP's claim that the EEOC failed to consider possible alternatives, specifically the "equal cost equal benefit" provision in section 4 of the ADEA, also fails. The EEOC considered, at length, whether the "equal cost equal benefit" provision would be sufficient to address the problem of declining retiree health benefits, and concluded as a policy matter that relying solely on this approach would be impractical or impossible. Id. at 41,544–46. Therefore, it is clear that the EEOC's proposed regulation was supported by the agency's full consideration of the relevant factors, potential effects, and possible alternatives to such a policy, and was not arbitrary or capricious.

Finally, AARP challenges the regulation based on the notice and comment requirements of the APA, asserting that the proposed regulation was based on comments and information that were not publicly available during the notice and comment period. The plain language of section 553 of the APA fails to support this claim. For notice and comment rulemaking, as here, the APA requires only "[g]eneral notice of proposed rule making . . . in the Federal Register," including "either the terms or substance of the proposed rule," and "an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(b)–(c). Here, the EEOC provided general notice of the proposed rulemaking,

17

including the terms of the rule and a lengthy explanation of its rationale, and provided an opportunity for interested parties to participate in the rulemaking through the submission of comments. 68 Fed. Reg. at 41,542, 41,548–49. Therefore, the EEOC fulfilled the requirements of section 553.

In addition, an agency is not required to disclose all informal contacts related to the issue addressed in a notice and comment rulemaking, "so long as [the contacts] do not frustrate judicial review or raise serious questions of fairness." Home Box Office, Inc. v. F.C.C., 567 F.2d 9, 57 (D.C. Cir. 1977). The EEOC has acknowledged the informal communications being challenged by AARP for the purposes of judicial review, and noted that the communications took place well before official notice of the rulemaking. These contacts therefore do not frustrate judicial review or raise questions of fairness. Because the EEOC adhered to the notice and comment requirements of the APA and did not engage in improper communications with respect to the rulemaking, the proposed regulation is valid under the APA.

For the foregoing reasons, the proposed regulation is within the EEOC's authority under the ADEA and valid according to the requirements of the APA.

**CONCLUSION**

For the reasons stated above, we will AFFIRM the District Court's order dated September 27, 2005, granting the EEOC's Motion for Relief from Judgment, vacating the District Court's prior order dated March 30, 2005, and lifting the injunction of the implementation of the proposed regulation.